# 19-3769-cv

## United States Court of Appeals

FOR THE SECOND CIRCUIT

MICHAEL P. KEARNS, in his individual capacity and official capacity as Clerk of the County of Erie, New York,

*Plaintiff-Appellant,*

— v. —

ANDREW M. CUOMO, in his official capacity as Governor of the State of New York, LETITIA JAMES, in her official capacity as Attorney General of the State of New York, MARK J.F. SCHROEDER, in his official capacity as Commissioner of the New York State Department of Motor Vehicles,

*Defendants-Appellees,*

On Appeal from the United States District Court
for the Western District of New York

**BRIEF OF AMICUS CURIAE NEW YORK CIVIL LIBERTIES UNION IN SUPPORT OF DEFENDANTS-APPELLEES AND AFFIRMANCE**

NEW YORK CIVIL LIBERTIES
  UNION FOUNDATION
Antony P. F. Gemmell
Christopher T. Dunn
125 Broad Street, 19th Floor
New York, New York 10004
212-607-3300
agemmell@nyclu.org

Dated: February 19, 2020
New York, New York

# CORPORATE DISCLOSURE STATEMENT

The New York Civil Liberties Union is a non-profit 501(c)(4) corporation. It has no parent corporation and does not issue stock.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................... ii

TABLE OF AUTHORITIES ................................................................... iiii

IDENTITY, INTEREST, AND AUTHORITY TO FILE ............................ 1

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................. 3

CONCLUSION .......................................................................................... 7

CERTIFICATE OF COMPLIANCE ........................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Hernandez v. United States*, 939 F.3d 191 (2d Cir. 2019) .......................... 1

*Kearns v. Cuomo*, --- F. Supp. 3d ---, 1:19-cv-902-EAW, 2019 WL 5849513 (W.D.N.Y. Nov. 8, 2019) ........................................................ 2

*Lewis-McCoy v. Wolf*, No. 1:20-cv-1142-JMF (S.D.N.Y. Feb. 10, 2020) ... 2

*Plyler v. Doe*, 457 U.S. 202 (1982) ................................................................ 5

*State of New York v. Dep't of Justice*, 19-267 (L), 19-275 (con.) (2d Cir. (2d Cir. argued Jun. 18, 2019) ................................................................ 1

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ....................................................... 8

**Statutes**

8 U.S.C. § 1101 *et seq.* .................................................................................. 5

8 U.S.C. § 1154 ............................................................................................... 7

8 U.S.C. § 1158 ............................................................................................... 6

8 U.S.C. § 1226(a) .......................................................................................... 7

8 U.S.C. § 1229 ....................................................................................... 5, 6, 7

8 U.S.C. § 1231(b)(3) ..................................................................................... 7

8 U.S.C. § 1255(i) ........................................................................................... 6

8 U.S.C. § 1324 ........................................................................................ 3, 4, 8

**Regulations**

8 C.F.R. § 274 ................................................................................................. 7

**Other Authorities**

Beth Lyon, *When More "Security" Equals Less Workplace Safety: Reconsidering U.S. Laws that Disadvantage Unauthorized Workers*, 6:3 U. PA. J. LAB. & EMP. L. 571 (2004) ..................................................... 4

*Immigration Court Backlog Tool*, TRAC IMMIGRATION, https://trac.syr.edu/phptools/immigration/court_backlog (last visited Feb. 19, 2020) ............................................................................................ 6

# IDENTITY, INTEREST, AND AUTHORITY TO FILE

Amicus curiae the New York Civil Liberties Union ("NYCLU") is the New York State affiliate of the American Civil Liberties Union.[1] The NYCLU is a non-partisan, non-profit membership organization with more than 200,000 members and supporters across New York. The NYCLU's mission is to defend and promote the fundamental principles and values embodied in the Constitution. In furtherance of that mission, the NYCLU litigates, advocates, and educates on a wide range of constitutional issues impacting the rights of New Yorkers — citizens and non-citizens alike.

The NYCLU has a particular, longstanding interest in the impact of federal immigration statutes on the intergovernmental balance of power and frequently serves as counsel or amicus in litigation to ensure the nation's federal immigration enforcement system properly respects the constraints of federalism. *See, e.g.*, *State of New York v. Dep't of Justice*, Nos. 19-267 (L), 19-275 (con.) (2d Cir. argued Jun. 18, 2019)

---

[1] Pursuant to Rule 29(a)(4)(E) of the Federal Rules of Appellate Procedure and Local Rule 29.1(b), the NYCLU states that its counsel authored this brief in whole; no other party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person — other than the NYCLU, its members, or its counsel — contributed money that was intended to fund preparing or submitting the brief.

(amicus); *Hernandez v. United States*, 939 F. 3d 191 (2d Cir. 2019) (amicus); *Lewis-McCoy v. Wolf*, No. 1:20-cv-1142-JMF (S.D.N.Y. filed Feb. 10, 2020) (counsel). In this case, the NYCLU also served as amicus curiae at the district level. *See Kearns v. Cuomo*, --- F. Supp. 3d ---, 1:19-cv-902-EAW, 2019 WL 5849513 (W.D.N.Y. Nov. 8, 2019).

Vindicating the constitutional principles at stake in this litigation is of central importance to the NYCLU and its mission. With the consent of the Plaintiff-Appellant and the Defendants-Appellees, the NYCLU therefore submits this brief in support of the State and the Driver's License Access and Privacy Act.

## INTRODUCTION

This appeal involves a challenge under the Supremacy Clause by Erie County Clerk Michael Kearns to the Driver's License Access and Privacy Act (the "Act"), a newly enacted law by which the State of New York regulates drivers without regard to immigration status and commits to better protecting their sensitive personal data. Among a host of arguments the court below rejected and Kearns renews on appeal is his claim that the Act conflicts with the Immigration and

1

Nationality Act's ("INA") anti-harboring provisions, thereby subjecting him to the risk of criminal prosecution. *See* 8 U.S.C. § 1324.[2]

Kearns's harboring argument relies in part on the notion that processing standard driver's license applications without regard to immigration status under the Act entails the mental state required for criminal harboring: knowledge or reckless disregard of an applicant's unlawful presence in the United States. Pl.-Appellant's Br. 31, ECF No. 26. While conceding he "may not know for sure that every standard-license applicant is present unlawfully," Kearns contends "there is a substantial risk" with respect to each such applicant because the mere act of applying for a standard driver's license offers "profoundly meaningful" evidence of unlawful presence. *Id.* at 32, 43.

The State proffers numerous valid explanations for rejecting that remarkable claim — among them, that "such determinations are governed by a complex federal scheme and can be far from straightforward." Defs.-Appellees' Br. 24, ECF No. 42. The NYCLU

---

[2] In relevant part, Section 1324 imposes criminal penalties on "[a]ny person who . . . knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place." 8 U.S.C. § 1324(a)(1)(A)(iii).

2

agrees with the State and submits this brief to emphasize a single point: that Kearns lacks the ability, authority, or occasion to assess whether any driver's license applicant is unlawfully present in the United States.

## ARGUMENT

Kearns's claim that even-handed processing of driver's license applications under the Act subjects him to the risk of prosecution for harboring lacks merit because complying with the Act does not entail the mental state required for a violation of Section 1324. "The mens rea applicable to a substantive harboring charge is knowledge or reckless disregard of an alien's[3] unlawful presence." Pl.-Appellant's Br. 31. Under the standard that Kearns himself identifies, his harboring argument fails because he lacks any basis for assessing unlawful presence.

Kearns's harboring argument presumes that unlawful presence in the United States can be determined outside the context of a formal

---

[3] Because referring to people as "aliens" is dehumanizing, this brief uses "individuals" or "people" in lieu of "aliens," except to quote case law, statute, regulation, or Michael Kearns. *See* Beth Lyon, *When More "Security" Equals Less Workplace Safety: Reconsidering U.S. Laws that Disadvantage Unauthorized Workers*, 6:3 U. PA. J. LAB. & EMP. L. 571, 576 (2004) (describing the term as "patently dehumanizing").

removal proceeding before a qualified immigration judge. The INA makes clear it cannot. *See generally* 8 U.S.C. § 1101 *et seq.* (setting forth comprehensive procedure for removal); *see also Plyler v. Doe*, 457 U.S. 202, 240 n.6 (1982) (Powell, J., concurring) ("Until an undocumented alien is ordered deported by the Federal Government, no State can be assured that the alien will not be found to have a federal permission to reside in the country.").

Whether a New York driver's license applicant— even one without current immigration status— is permitted to remain in the United States is a decision that federal law vests in our immigration courts, not the Office of the Erie County Clerk. *See* 8 U.S.C. § 1229a(a)(3) (calling a removal proceeding before an immigration judge the "sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States"). The question of unlawful presence implicates a constellation of complex legal and factual analyses that Michael Kearns— a county clerk, not an immigration judge— is simply unqualified to undertake. *See Plyler*, 457 U.S. at 236 (Blackmun, J., concurring) ("[T]he structure of the immigration statuses make it

impossible for the State to determine which aliens are entitled to residence, and which eventually will be deported.").

In the first place, any driver's license applicant who lacks current immigration status may nonetheless be in the process of acquiring it or otherwise obtaining relief from removal. Far from requiring the deportation of all undocumented individuals, the INA provides numerous avenues for them to remain in the country. *See, e.g.*, 8 U.S.C. § 1255(i) (allowing individuals who entered the United States unlawfully to adjust status to lawful permanent residence); *id.* § 1158 (authorizing asylum to refugees fleeing persecution abroad); *id.* § 1229b(b) (authorizing cancellation of removal, a form of relief from deportation, to certain persons subject to removal). In fact, some pathways to adjusting status actually *condition* eligibility on a certain duration of presence, even when that presence has been unlawful. *See, e.g.*, *id.* § 1229b(b)(1)(A) (requiring ten years of continuous physical presence in the United States to qualify for cancellation of removal).

Federal immigration law also recognizes that people who currently lack immigration status sometimes reside in the United States with the explicit knowledge — and even permission — of the

federal government. The INA specifically allows for individuals in removal proceedings to be released into the community pending the outcome of their often lengthy immigration cases.[4] *See id.* § 1226(a) (providing for the release on bond or conditional parole of certain individuals in removal proceedings). And Department of Homeland Security regulations implementing the INA enumerate several categories of individuals who, despite lacking lawful immigration status, may nonetheless receive permission to work in the United States. *See* 8 C.F.R. § 274a.12(c)(8)–(11), (14).

Even individuals found removable after removal proceedings may still be permitted to remain in the United States, their lack of lawful status notwithstanding. *See, e.g.*, 8 U.S.C. § 1154 (relief from removal for spouses and other relatives of U.S. citizens); *id.* § 1229b(b)(2) (same for survivors of domestic violence); *id.* § 1231(b)(3) (same for those

---

[4] Removal proceedings are lengthy, typically lasting years. In Fiscal Year 2020, the average removal proceeding in New York State had been pending for 720 days. *See Immigration Court Backlog Tool*, TRAC IMMIGRATION, https://trac.syr.edu/phptools/immigration/court_backlog (last visited Feb. 19, 2020). Where relief was ultimately granted, that average was 1,096 days. *See id.* Kearns does not explain why individuals whom the Government does not detain during these years-long proceedings should be forbidden from driving or how processing their driver's license applications would facilitate their unlawful presence in the United States.

6

seeking protection from persecution under the Convention Against Torture); *see also Zadvydas v. Davis*, 533 U.S. 678, 699–702 (2001) (requiring release from immigration detention of certain individuals who have final orders of removal against them).

Whether a standard driver's license applicant lacking current immigration status will ultimately be found unlawfully present is a question appropriately answered only after a full administrative hearing before an immigration judge, along with accompanying procedural safeguards, including administrative appeal and judicial review. Because Kearns lacks the ability, authority, or occasion to answer the question of unlawful presence himself, his mere compliance with the Act does not — and could not — satisfy the mens rea requirement for criminal harboring under Section 1324.

## CONCLUSION

For the foregoing reasons, mere compliance with the Act does not amount to criminal harboring under Section 1324. Consequently, Section 1324 does not conflict with the Act, and this Court should affirm the lower court's decision on that issue.

Dated:  February 19, 2020
        New York, New York

                          Respectfully submitted,

                          NEW YORK CIVIL LIBERTIES
                            UNION FOUNDATION

                    By:   */s/ Antony P. F. Gemmell*
                          Antony P. F. Gemmell
                          Christopher T. Dunn
                          125 Broad Street, 19th Floor
                          New York, New York 10004
                          212-607-3300

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Local Rule 29.1(c) because it contains 1,590 words, excluding those parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

I further certify that this brief complies with the typeface and type style requirements of Rules 32(a)(5) and 32(a)(6), respectively, of the Federal Rules of Appellate Procedure because the brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: February 19, 2020

/s/ Antony P. F. Gemmell
Antony P. F. Gemmell

*Counsel for Amicus Curiae
the New York Civil Liberties
Union*