

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

BARBARA D. UNDERWOOD
SOLICITOR GENERAL
DIVISION OF APPEALS & OPINIONS

May 24, 2020

Catherine O'Hagan Wolfe
Clerk of the Court
U.S. Court of Appeals for the Second Circuit
40 Foley Square
New York, NY 10007

    Re: *Kearns v. Cuomo et al.*, No. 19-3769

Dear Ms. Wolfe:

Appellees Governor Andrew Cuomo, Attorney General Letitia James, and Department of Motor Vehicles (DMV) Commissioner Mark J.F. Schroeder respectfully submit this letter in accordance with the Court's May 14, 2020, Order, which directed the parties to address whether: (1) Kearns acts in his official capacity as Erie County Clerk when implementing the provisions of the Driver's License Access and Privacy Act (the Act); and (2) a state official acting in his official capacity is a "person" within the meaning of 8 U.S.C. § 1324(a).

As set forth below, Kearns acts in his capacity as an agent of the State DMV Commissioner when he administers the Act. And in the narrow circumstances presented in this case—when acting as a state agent in carrying out the very conduct mandated by state law—Kearns is not a "person" within the meaning of 8 U.S.C. § 1324(a). Kearns accordingly cannot demonstrate that he faces a credible threat of federal prosecution for harboring merely for discharging his ministerial obligations in implementing the Act's provisions.

## ARGUMENT

### I. KEARNS ACTS AS A STATE AGENT WHEN ADMINISTERING THE ACT.

State law requires Kearns, as Erie County Clerk, to perform licensing functions as an agent of the New York State DMV Commissioner. Kearns thus acts solely in his official capacity and as a state agent when he implements the Act.

Vehicle and Traffic Law (VTL) § 205(1) directs that the county clerk of Erie County "*shall* act as the agent of the [DMV] commissioner" "in the issuance of non-driver identification cards and drivers' licenses" (emphasis added). As the district court correctly observed, Kearns's role is "purely ministerial" because "it is the State of New York, acting via the

2

DMV Commissioner, and not [Kearns]" that issues driver's licenses, and Kearns "has no independent power or authority to grant or deny driving privileges to any person" outside of his capacity as an agent of the DMV Commissioner. (*See* Special Appendix (S.P.A.) 21 n.7). *See* VTL § 508; *id.* § 205(1).

Kearns does not exercise discretion in applying the provisions of the Act that govern his ministerial licensing duties, such as those dictating what identification he must accept from license applicants. Accordingly, Kearns acts in a purely ministerial capacity—as an agent of the State DMV Commissioner—when implementing the Act's directives to issue driver's licenses without regard for immigration status and to maintain the confidentiality of driver and applicant personal information.

## II. THE PROHIBITIONS OF 8 U.S.C. § 1324(A) DO NOT COVER MINISTERIAL ACTIONS OF A STATE OFFICIAL THAT ARE MANDATED BY STATE LAW.

Kearns's theory of injury is that implementing the law in his capacity as an agent of the DMV Commissioner will expose him to the risk of federal prosecution under § 1324(a)(1)(A)(iii). As explained in the State's brief (Br. for Appellees (Br.) at 40-41), the criminal penalties of § 1324(a) cover only "person[s]," not the State or its agencies. This

3

conclusion derives from the "longstanding interpretive presumption" that Congress does not intend "person" to "include the sovereign." *Return Mail, Inc. v. United States Postal Serv.*, 139 S. Ct. 1853, 1861-62 (2019); *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 780-81 (2000); *see* 1 U.S.C. § 1 (defining "person" to include "corporations, companies" as well as "natural persons," but not States or their agencies).[1]

In *Will v. Michigan Department of State Police*, the Supreme Court established the framework for determining whether a federal statute imposing liability on persons should be construed to impose liability on States or their officers. 491 U.S. 58 (1989). In construing the word "person" for purposes of liability under 42 U.S.C. 1983, the Court held that a State is not a "person" subject to § 1983 liability because abrogating the State's traditional immunity from liability requires a

---

[1] The presumption and resulting analysis of congressional intent is not necessarily the same for local government bodies and their officers as for the State and its officers, *see Monell v. Department of Social Servs.*, 436 U.S. 658, 688-93 (1978), and thus a different circumstance might be presented if Kearns were acting solely in his capacity as a county officer in administering the Act, rather than in his capacity as an agent of the State, as is the case here.

4

clear expression of congressional intent not found in that statute. *See id.* at 71.

And the Court in *Will* concluded that a state official sued in his official capacity is likewise not a "person" subject to liability under § 1983, because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and by extension, a suit against the State. *Id.* As the Supreme Court has explained, there is no difference between suing the State and suing the state officer in an official capacity, because "the effect of the judgment would be to restrain the Government from acting, or compel it to act." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 & n.11 (1984) (equating the State and its officer for purposes of Eleventh Amendment immunity). But because in § 1983 (and in its criminal analogue, 18 U.S.C. § 242), Congress plainly manifested its intent to impose liability on persons acting "under color of [law]," state officers may be liable under those statutes if sued in a personal capacity. *See* 42 U.S.C. § 1983; *see also, e.g.,* 18 U.S.C. § 666 (criminal penalties for embezzlement directed to "agent[s] of an organization, or of a State, local, or Indian tribal government, or any agency thereof").

By contrast, the text of 8 U.S.C. § 1324(a) contains no similar language or other "affirmative showing," *see Vermont Agency*, 529 U.S. at 781, that Congress intended "person" in § 1324(a) to include agents of a State who are acting solely in their official capacity and performing duties mandated by state law. Nor does the legislative history of § 1324(a) indicate that Congress was concerned about state laws or the conduct of state officials when it enacted prohibitions against the smuggling of undocumented persons more than a century ago, or when it later expanded those prohibitions to cover closely related activities. As this Court has recognized, § 1324 was originally enacted by Congress in 1907 to "criminalize[] the smuggling and transport of aliens into the United States." *United States v. Vargas-Cordon*, 733 F.3d 366, 379 (2d Cir. 2013); *accord United States v. Costello*, 666 F.3d 1040, 1045 (7th Cir. 2012). The earliest versions of § 1324 were primarily directed to private parties—common carriers in particular—who were transporting aliens into the country. *See* Ch. 477, § 274(a)(3), 66 Stat. 163, 228-29 (1952) ("[a]ny person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who . . . willfully or knowingly conceals, harbors, or shields from detection . . . in

any place, including any building or any means of transportation" of unlawfully present person "shall be guilty of a felony").

Congress does not ordinarily choose to direct the conduct of States by criminalizing the conduct of state officers, and should not lightly be found to have done so here. When the federal government concludes that a state law is invalid or preempted by an act of Congress, it may bring a civil suit to enjoin the state law on the basis of preemption, and it does so with some regularity. *See, e.g.*, *United States v. California*, 921 F.3d 865 (9th Cir. 2019); *Arizona v. United States*, 567 U.S. 387 (2012). Congress has no practice of authorizing criminal prosecutions against state officials for implementing state law as a means of enforcing the Supremacy Clause.

The absence of congressional intent to cover state officers performing ministerial acts pursuant to state law does not bar their federal prosecution for acts *in excess* of their authority under state law. *See, e.g.*, *United States v. Gillock*, 445 U.S. 360 (1980) (prosecution of state legislator for bribery and racketeering in connection with performance of official duties); *see also Pennhurst*, 465 U.S. at 101 n.11 (claim that state official was acting *ultra vires* renders suit as *not* being

brought against the State). But that circumstance is not implicated here, because Kearns does not allege that he will be acting outside of the authority conferred on him by state law. To the contrary, he alleges that he is at risk of federal criminal prosecution for performing nondiscretionary actions required of him by state law.

The doctrine of constitutional avoidance further counsels against construing "person" in § 1324(a) to include agents of the State who are merely discharging their ministerial obligations imposed by state law. *See Ragbir v. Homan*, 923 F.3d 53, 65-66 (2d Cir. 2019) (as between two plausible constructions, courts are obligated to construe statute to avoid constitutional problems). Although the federal criminal prosecution of a state official solely for administering a state regulatory scheme may not be an impermissible "direct order[]" to a state legislature to act or refrain from acting, *see Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1478 (2018), it is an extremely forceful means of compelling state officials to abandon the State's policies. And forcing state officials to disengage from their official duties in order to provide information about license applicants to federal authorities potentially raises Tenth Amendment concerns both by preventing the State from enforcing rules

governing the conduct of its employees and agents, and impairing the State's ability to collect such information in the first place and thereby undermining performance of the licensing function.

Before construing a statute in a manner that "alter[s] the 'usual constitutional balance between the States and the Federal Government,'" courts must ensure that Congress has made its intent to do so "unmistakably clear in the language of the statute." *See Gregory v. Ashcroft*, 501 U.S. 452, 460-61 (1991). As demonstrated above, no such "unmistakably clear" intent appears in § 1324(a).

Properly construed in light of "longstanding interpretive presumption[s]," *see Vermont Agency*, 529 U.S. at 781, the criminal prohibitions of § 1324(a) do not cover agents of the State who are performing ministerial acts mandated by state law. While no court has ever addressed this precise question in the context of § 1324, we have been unable to identify a single instance of a state official ever having been prosecuted for *any* federal criminal offense based solely on discharging his ministerial state law obligations. And as the State observed earlier (Br. at 35-36), Kearns also has not identified any prosecution or threatened prosecution under § 1324(a)(1)(A)(iii) against

9

a government official for administering a licensing and nondisclosure scheme. Thus, even if there were any uncertainty as to whether agents of a State are categorically excluded from criminal prosecution under § 1324(a) when simply doing what they are required to do under state law, Kearns cannot demonstrate that he will likely be prosecuted under § 1324(a). The interpretation of § 1324(a) set forth herein is simply one of several reasons why Kearns's claim of a threatened prosecution is wholly illusory and cannot support an injury-in-fact for Article III purposes.

\* \* \*

For the reasons set forth in this letter and in the State's main brief, this Court should affirm the dismissal of the amended complaint for lack of standing.

Respectfully submitted,

LETITIA JAMES
  *Attorney General*
  *State of New York*

| | |
|---|---|
| BARBARA D. UNDERWOOD<br>  *Solicitor General*<br>JEFFREY W. LANG<br>  *Deputy Solicitor General*<br>    *of Counsel* | By:   /s/ *Linda Fang*<br>    Linda Fang<br>    Assistant Solicitor General |